IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| JOSE RAUL PALACIOS,<br>TDCJ-CID No. 02570973,<br><br>Plaintiff,<br><br>v.<br><br>POTTER COUNTY DETENTION FACILITY, *et al.*,<br><br>Defendants. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | 2:25-CV-129-Z-BR |

**FINDINGS, CONCLUSIONS AND RECOMMENDATION TO DISMISS COMPLAINT**

Before the Court is the Amended Complaint (ECF 7) filed by Plaintiff Jose Raul Palacios against numerous defendants, alleging violations of his civil rights under 42 U.S.C. § 1983. Palacios filed this lawsuit *pro se* while a prisoner in the Potter County Detention Center in Amarillo, Texas, and has been granted permission to proceed *in forma pauperis*. As such, his lawsuit is subject to preliminary screening as provided by the Prison Litigation Reform Act ("PLRA"). Pursuant to such screening and for the reasons stated below, the Magistrate Judge recommends that the Amended Complaint be DISMISSED under 28 U.S.C. §§ 1915 and 1915A.

## I. STANDARD OF REVIEW

A court must dismiss a complaint filed *in forma pauperis* by a prisoner against a government entity or employee if the court determines that the complaint is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B) (2017); *see also* Section 1915A(b) (applying section to any suit by a prisoner against certain governmental entities, regardless of whether the prisoner is proceeding *in forma pauperis*). A frivolous complaint lacks any arguable

basis, either in fact or in law, for the wrong alleged. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). A complaint has no arguable basis in fact if it rests upon clearly fanciful or baseless factual contentions, and similarly lacks an arguable basis in law if it embraces indisputably meritless legal theories. *See id.* at 327; *Geiger v. Jowers*, 404 F.3d 371, 373 (5th Cir. 2005). When analyzing a prisoner's complaint, the court may consider reliable evidence such as the plaintiff's allegations, responses to a questionnaire, and authenticated prison records. *Wilson v. Barrientos*, 926 F.2d 480, 483-84 (5th Cir. 1991); *see also Berry v. Brady*, 192 F.3d 504, 507 (5th Cir. 1999) (explaining that responses to a questionnaire or testimony given during an evidentiary hearing are incorporated into the plaintiff's pleadings).

In evaluating the sufficiency of a complaint, the Court accepts well-pleaded factual allegations as true, but does not credit conclusory allegations that merely restate the legal elements of a claim. *Chhim v. Univ. of Tex. at Austin*, 836 F.3d 467, 469 (5th Cir. 2016). While courts hold *pro se* plaintiffs to a more lenient standard than attorneys when analyzing complaints, such plaintiffs must nevertheless plead factual allegations that raise the right to relief above a speculative level. *Id.* (*citing Taylor v. Books A Million, Inc*., 296 F.3d 376, 378 (5th Cir. 2002)).

## II. LEGAL ANALYSIS

### A. Factual Background.[1]

On or about January 28, 2025, Palacios was booked into the Potter County Detention Center. He told booking officers Defendants Carrol and Boggs that he needed medical attention for a broken nose and a shoulder injury suffered during his arrest. (ECF 7 at 9, ECF 14 at 4-6). He

[1]These background facts are taken from Palacios' Amended Complaint (ECF 7) and questionnaire responses (ECF 14) and are assumed to be true for the purpose of evaluating the merits of Palacios' causes of action.

apparently had a visible laceration on his nose. (ECF 14 at 16). Carrol and Boggs told him to put in a sick call. He also asked Carrol and Boggs for access to a telephone so he could call his family and make bond arrangements, but they denied his request. (ECF 7 at 9, ECF 14 at 5-6). Neither Carrol nor Boggs provided him with a sick call request (*Id.*). The next day, he asked Defendant Trevino for medical attention, but none was provided. He also claims that Trevino falsified his answers to suicide protocol questions, thereby keeping him in direct observation suicide watch although he was not, in fact, suicidal. (ECF 7 at 9-11, ECF 14 at 8). Palacios contends that being kept on suicide watch prevented him from contacting his family. (ECF 14 at 9).

On January 30, 2025, Palacios asked Defendant Christopher for access to a telephone, but Christopher denied the request. (ECF 7 at 10, ECF 14 at 16). On the same day, he also asked Christopher for medical care, but Christopher told him to put in a sick call. (*Id.*). On February 1, 2025, he asked Defendants Tovar and Sikalasnih for medical care on what appear to be separate occasions. They both told Palacios to put in a sick call. (ECF 7 at 11, ECF 14 at 7, 11). He also complains that the Potter County Detention Center kept him in "substandard sanitary conditions" that equated to cruel and unusual punishment because he had no soap, toothpaste, toothbrush or shower. (*Id.* at 12).

On February 2, 2025, Palacios asked Defendants Florez and Mackey, apparently on separate occasions, for access to a telephone, which they each denied. (ECF 7 at 12; ECF 14 at 10, 15). On February 3, 2025, Trevino again asked Palacios the suicide protocol questions and told him that he would be cleared. However, an officer told him that he would not be moved for another 24 hours because they had nowhere else to put him. (*Id.*). On February 4, 2025, Palacios told Mackey that he had been cleared and wanted to use the telephone. Mackey told Palacios that he would notify the trusty, but nothing further was done and Palacios apparently did not get to use a

telephone at that time. (*Id*. at 13).

On February 4, 2025, Trevino again asked Palacios the suicide protocol questions. (*Id*.). He then was moved from the suicide watch cell and into a regular cell. After the move, Palacios was able to make his first phone call and he put in a sick call request. (*Id*.). He was seen by medical on February 9, 2025. (*Id*.). He asked Defendant Garcia to provide a copy of jail policies for intake and video usage, but Garcia refused. (*Id*. at 14-15).

On May 5, 2025, Palacios filed suit against Carrol, Boggs, Christopher, Tovar, Sikalasnih, Florez, Trevino, Mackey and Turnkey Medical (Trevino's employer) for their failure to provide medical care and failure to provide him the use of a telephone while he was on suicide watch. He sues Potter County and Sheriff Brian Thomas for their alleged failure to train employees and deputies to provide medical care to inmates on suicide watch. (ECF 14 at 2-4). For the reasons stated below, Palacios' claims should be dismissed as frivolous.[2]

**B. Claim Against Potter County Detention Center.**

Palacios names the Potter County Detention Center as a Defendant in this case. Under Federal Rule of Civil Procedure 17(b), in order to be sued, a "part[y] must have the capacity to sue or be sued." *See Maxwell v. Henry*, 815 F. Supp. 213, 215 (S.D. Tex. 1993); *see also* FED. R. CIV. P. 17(b) (capacity to sue or be sued). "Federal courts in Texas have uniformly held that entities

---

[2]Palacios' initial complaint also includes numerous other Defendants: Giles, Frazier, Harper, Valeriano, Samaniego, McLaughlin, Soe, McGee, Baker, Connor, Broom, Cueto, Rezazadeh, Gutierrez, Spears, Anderson, Warren, Buckley and Taylor. However, he did not include these Defendants in his Amended Complaint. As a result of the omission, they have been voluntarily dismissed by Palacios. An amended complaint that omits a defendant operates as a voluntary dismissal as to that defendant. *See Swanson v. Perez,* 250 F. App'x 596, 597 (5th Cir. 2007) (holding that a city was properly excluded as a defendant after the city was not named in the plaintiff's amended complaint); *see also King v. Dogan,* 31 F.3d 344, 346 (5th Cir. 1994) ("An amended complaint supersedes the original complaint and renders it of no legal effect unless the amended complaint specifically refers to and adopts or incorporates by reference the earlier pleading."). Even construing Palacios' complaint broadly and including his claims against these Defendants, such claims are identical to the claims addressed herein that should be dismissed for failure to state a viable cause of action, due to the lack of factual allegations supporting the claims against them.

without a separate jural existence are not subject to suit." *Torti v. Hughes*, 3:07CV-1476-M, 2007 WL 4403983, at *2 (N.D. Tex. Dec. 17, 2007). "State agencies that may sue and be sued are known as jural entities; non-jural entities are not subject to suit." *Thrasher v. Fort Worth Police Dep't*, No. 4:20-cv-350-SDJ-KPJ, 2021 WL 1139746, at *2 (E.D. Tex. Feb. 22, 2021) (defendant Fort Worth Police Department is a non-jural entity that cannot be sued), *R. & R. adopted*, 2021 WL 1123773 (E.D. Tex. Mar. 24, 2021).

In Texas, jails are not considered jural entities capable of being sued. *See, e.g., White v. Ermatinger*, No. 3:21-CV-3037-D-BN, 2021 WL 6339266, at *2 (N.D. Tex. Dec. 9, 2021) ("this Court has previously held that the Ellis County Jail is not a jural entity."), *R. & R. adopted*, No. 3:21-CV-3037-D, 2022 WL 94171 (N.D. Tex. Jan. 10, 2022); *Hatton v. Harris Cnty. Jail*, No. CV H-18-1948, 2019 WL 1858826, at *2 (S.D. Tex. Apr. 25, 2019) ("the Harris County Jail … is not a separate legal entity from Harris County and therefore it lacks the legal capacity to be sued"); *West v. Lew Sterrett Just. Ctr. of Dallas Cnty.*, No. 1:15-CV-219-SS, 2015 WL 1651539, at *3 (W.D. Tex. Apr. 14, 2015) ("Federal courts in Texas have uniformly held that entities without a separate jural existence are not subject to suit--and specifically that the Lew Sterrett Justice Center is not a jural entity subject to suit.").

Palacios pleads no facts demonstrating a grant of jural authority to the Potter County Detention Center. In addition, the detention center is not liable for the actions of its employees because 42 U.S.C. § 1983 does not impose vicarious liability. *Bigford v. Taylor*, 834 F.2d 1213, 1220 (5th Cir. 1988). For these reasons, any claims against the Potter County Detention Center should be dismissed.

**C. Official Capacity Claims.**

Palacios states that he is suing Defendants in their individual and official capacities. (ECF 14 at 18). An official capacity claim is merely another way of pleading an action against the entity of which the individual defendant is an agent and, in this case, a suit against Defendants in their official capacity would be considered a suit against their employer, Potter County (and Turnkey Medical as Trevino's employer). *See Kentucky v. Graham*, 473 U.S. 159, 165 (1985); *see also Ricks v. Mack*, No. 4:15-CV-209-A, 2015 WL 2330133 at *2 (N.D. Tex. May 14, 2015) (finding city was the proper defendant for official capacity claims asserted against employees of city's police department); *see also Gordon v. Neugebauer*, No. 1:14-CV-0093-J, 2014 WL 5531734, at *5 (N.D. Tex. Oct. 31, 2014) (construing all allegations against the Abilene Police Department as allegations against the City of Abilene).

Municipalities, including counties and cities, may be held liable under Section 1983 if the execution of one of its customs or policies deprives a plaintiff of his or her constitutional rights. *Hampton Co. Nat'l Sur., LLC v. Tunica County*, 543 F.3d 221, 224 (5th Cir. 2008); *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 690-91 (1978). It is well settled that a municipality "may not be held liable under § 1983 on a basis of vicarious liability." *Hicks-Fields v. Harris Cnty., Texas*, 860 F.3d 803, 808 (5th Cir. 2017) (citing *Monell,* 436 U.S. at 690-91).

"To establish municipal liability under § 1983, a plaintiff must show that (1) an official policy (2) promulgated by the municipal policymaker (3) was the moving force behind the violation of a constitutional right." *Peterson v. City of Fort Worth*, 588 F.3d 838, 847 (5th Cir. 2009). "Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." *Connick v. Thompson*, 563 U.S. 51, 61 (2011). "Official policy" is defined as:

> 1. A policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the municipality's lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority; or
>
> 2. A persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy. Actual or constructive knowledge of such custom must be attributable to the governing body of the municipality or to an official to whom that body had delegated policy-making authority. Actions of officers or employees of a municipality do not render the municipality liable under § 1983 unless they execute official policy as above defined.

*Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir. 1984) (per curiam); accord *Pineda v. City of Houston*, 291 F.3d 325, 328 (5th Cir. 2002). "To proceed beyond the pleading stage, a complaint's 'description of a policy or custom and its relationship to the underlying constitutional violation…cannot be conclusory; it must contain specific facts.'" *Peña v. City of Rio Grande City*, 879 F.3d 613, 622 (5th Cir. 2018) (quoting *Spiller v. City of Tex. City, Police Dep't*, 130 F.3d 162, 167 (5th Cir. 1997)). Plaintiffs must do more than describe the events leading up to their own injuries to establish a "*de facto* policy." *See Culbertson v. Lykos*, 790 F.3d 608, 629 (5th Cir. 2015) ("The allegations in this case are limited to the events surrounding the plaintiffs. That is not an allegation of a *de facto* policy[.]"); *Peña*, 879 F.3d at 622 ("[A] plaintiff must do more than describe the incident that gave rise to his injury" to plausibly "plead a practice so persistent and widespread as to practically have the force of law." (internal citation and quotation omitted)).

Palacios has failed to identify a specific policy or custom that was the moving source of a constitutional violation. (ECF 14 at 3). "[A] complaint must contain either direct allegations on every material point necessary to sustain a recovery ... or contain allegations from which an inference fairly may be drawn that evidence on these material points will be introduced at trial." *Campbell v. City of San Antonio*, 43 F.3d 973, 975 (5th Cir. 1995) (citation omitted); *see also*

*Nixon v. Dallas County, Texas*, No. 24-10082, 2025 WL 737338 (5th Cir. Mar. 7, 2025) ("Because his allegations are limited to the harm he personally faced, [plaintiff] failed to plead facts to establish that 'an official policy' existed."). Palacios' official capacity claims should be dismissed.[3]

**D. Claims Against Thomas.**

Palacios alleges that Thomas, as Potter County sheriff, is liable as the supervisor who allows officers to use excessive force. (ECF 14 at 3). Under Section 1983, however, supervisors are not liable for the actions of others, including their subordinates. *See Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009). Instead, only the direct acts or omissions of the supervisor will support a claim for individual liability under Section 1983. *Monell*, 436 U.S. at 692; *Jones v. Lowndes County, Miss*., 678 F.3d 344, 349 (5th Cir. 2012); *see also Murphy v. Kellar*, 950 F.2d 290, 292 (5th Cir. 1992) (a plaintiff bringing a Section 1983 action must "specify the personal involvement of each defendant"). A supervisor may be held liable under Section 1983 only when (1) the supervisor was personally involved in the constitutional deprivation, (2) there is a causal connection between the supervisor's wrongful conduct and a constitutional deprivation, or (3) the supervisor implemented a policy so deficient that the policy itself violates constitutional rights and is the moving force behind a constitutional deprivation. *Thompkins v. Belt*, 828 F.2d 298, 303-04 (5th Cir. 1987); *see also Peña*, 879 F.3d at 620; *Gates v. Tex. Dep't of Prot. & Reg. Servs*., 537 F.3d 404, 435 (5th Cir. 2008). As shown above, Palacios has failed to allege that Thomas implemented a deficient policy that violates Palacios' constitutional rights.

---

[3]To the extent Palacios' claims against the non-jural entity Potter County Detention Center that he had no soap, toothpaste, toothbrush or shower while on suicide watch could be construed as against Potter County, such claims fail to state a constitutional violation. (ECF 7 at 12). *See Hamilton v. Lyons*, 74 F.3d 99, 106 (5th Cir. 1996) ("Hamilton alleges that he was denied visitation, telephone access, recreation, mail, legal materials, sheets, and showers for a three-day period. We find that none of these allegations give[s] rise to a constitutional claim.").

Further, neither the Amended Complaint nor his questionnaire responses allege facts establishing that Thomas was personally involved in a decision that violated Palacios' constitutional rights. The claims against Thomas should be dismissed as frivolous.

**E. Access to Telephone.**

Palacios claims that Defendants Boggs, Carrol, Tovar, Mackey, Sikalasnih, Florez and Christopher violated his First Amendment rights by failing to provide Palacios access to a telephone so that he could call his family. (ECF 7). He also claims that denying him access to a telephone violates his rights under Texas state law, which requires that he be allowed two telephone calls within four hours of booking. (ECF 14 at 6). *See* 37 TEX. ADMIN. CODE § 291.1 ("Immediately after booking, but in no case later than four hours after arrival, a person shall be permitted to make at least two completed telephone calls."). These allegations fail to state a viable claim and should be dismissed.

First, Palacios may not seek relief under Section 1983 based on Defendants' alleged failure to comply with state law. Violation of state law alone does not create a constitutional violation or violation of a federal law. *See Woodard v. Andrus*, 419 F.3d 348, 353 (5th Cir. 2005) (noting that "a violation of a state statute alone is not cognizable under § 1983 because § 1983 is only a remedy for violations of federal statutory and constitutional rights"); *see also Stern v. Tarrant County Hosp. Dist.*, 778 F.2d 1052, 1059 (5th Cir. 1985) ("a violation of state law is neither a necessary nor a sufficient condition for a finding of a due process violation"). As a result, even if any of the Defendants violated Texas law in failing to provide Palacios a telephone call within four hours of booking, such failure does not equate to a violation of Palacios' constitutional rights.

Nor does a lack of telephone access for five days constitute an actionable violation of Palacios' First Amendment rights. It is well-established that an inmate "retains those First

Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." *Pell v. Procunier*, 417 U.S. 817, 822 (1974); *see also Turner v. Safley*, 482 U.S. 78, 95 (1987) (same); *Hudson v. Palmer*, 468 U.S. 517, 523 (1984) (same). The law also is clear, however, that "[t]he short-term denial of telephone privileges constitutes a *de minimis* level of imposition and does not implicate the Constitution." *Patterson v. Rose*, No. 5:21-CV-142, 2022 WL 16935623 *8 n.7 (N.D. Tex. Apr. 27, 2022); *see also Hamilton v. Lyons*, 74 F.3d 99, 106 (5th Cir. 1996) (affirming dismissal of detainee's conditions-of-confinement claim based on purported denial of "visitation, telephone access, recreation, mail, legal materials, sheets, and showers for a three-day period," concluding that "none of these allegations give[s] rise to a constitutional claim"). "[L]awful incarceration results in the necessary limitation of many privileges and rights of the ordinary citizen." *Hill v. Estelle*, 537 F.2d 214, 215 (5th Cir. 1976). "Prisoners have no right to unlimited telephone use. Instead, a prisoner's right to telephone access is subject to rational limitations in the face of legitimate security interests of the penal institution." *Young v. LeBlanc*, No. 19-13516, 2020 WL 3421132, at *20 (E.D. La. May 7, 2020) (internal quotation marks omitted), *R. & R. adopted by* 2020 WL 3415800 (E.D. La. June 22, 2020). "Prisons legitimately impose a variety of restrictions on inmates' use of telephones." *Id*. (quoting *Roy v. Stanley*, No. Civ. 02-CV-555-JD, 2005 WL 2290276, at *7 (D.N.H. Sept. 20, 2005)).

Thus, the Court concludes that Palacios' Amended Complaint, taken as true, has failed to allege facts showing that his inability to make a telephone call for five days placed unreasonable limitations upon his First Amendment rights. For this reason, Palacios' First Amendment claim should be dismissed.

**F. Delay in Providing Medical Care.**

Palacios alleges that Defendants Boggs, Carrol, Tovar, Trevino, Sikalasnih and Christopher violated his civil rights by failing to provide him medical care while he was on suicide watch. Each of them told him to put in a sick call request, but none brought him the paperwork by which he could request one from suicide watch. (ECF 7). As a result of these Defendants' conduct, Palacios alleges, he was unable to request a sick call for five days, and did not receive medical care for 12 days. (ECF 7 at 13).

The Constitution requires that prison officials provide adequate medical care. *Rogers v. Boatright*, 709 F.3d 403, 409 (5th Cir. 2013). An inmate seeking to establish a constitutional violation regarding medical care must allege facts showing that prison officials were deliberately indifferent to his serious medical needs. *Morris v. Livingston*, 739 F.3d 740, 747 (5th Cir. 2014) (explaining that because "only the 'unnecessary and wanton infliction of pain' implicates the Eighth Amendment, a prisoner advancing such a claim must, at a minimum, allege 'deliberate indifference' to his 'serious' medical needs'") (quoting *Wilson v. Seiter*, 501 U.S. 294, 297 (1991)). Deliberate indifference "is an extremely high standard to meet." *Brewster v. Dretke*, 587 F.3d 764, 770 (5th Cir. 2009) (internal quotation omitted). An inmate must first prove objective exposure to a substantial risk of serious bodily harm. *Gobert v. Caldwell*, 463 F.3d 339, 345 (5th Cir. 2006). As to the subjective component, an official acts with deliberate indifference only when he (1) knows the inmate faces "a substantial risk of serious harm" and (2) "disregards that risk by failing to take reasonable measures to abate it." *Farmer v. Brennan*, 511 U.S. 825, 847 (1994); *Gobert*, 463 F.3d at 346; *see also Harris v. Hegmann*, 198 F.3d 153, 159 (5th Cir. 1999) (per curiam) (stating that prison official is not liable for denial of medical treatment unless he knows of and disregards an excessive risk to inmate health or safety).

An official's "failure to alleviate a significant risk that the official should have perceived, but did not, is insufficient to show deliberate indifference." *Domino v. Tex. Dep't of Crim. Just.*, 239 F.3d 752, 756 (5th Cir. 2001) (alterations and internal quotation omitted) (quoting *Farmer*, 511 U.S. at 838). "[D]eliberate indifference cannot be inferred merely from a negligent or even a grossly negligent response to a substantial risk of serious harm." *Thompson v. Upshur Cnty.*, 245 F.3d 447, 459 (5th Cir. 2001). Instead, an official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Brewster*, 587 F.3d at 770 (quoting *Farmer*, 511 U.S. at 837); *see also Lawson v. Dallas Cnty.*, 286 F.3d 257, 262 (5th Cir. 2002) (holding that deliberate indifference is a "subjective inquiry," and inmate must show that the prison official was actually aware of risk of harm and consciously ignored it). In addition, delay in treatment may be actionable under Section 1983 only if there has been deliberate indifference and the delay itself results in substantial harm. *Stewart v. Murphy*, 174 F.3d 530, 537 (5th Cir. 1999); *Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir. 1993). Therefore, the question is whether Palacios has alleged a valid medical indifference claim against any of the named Defendants. The Court concludes that he has not.

**1. Defendants Carrol, Boggs, Sikalasnih, Tovar and Christopher.**

Palacios told Boggs and Carrol on January 28, 2025, that he needed medical care when they booked him into the Potter County Detention Center. They told him to put in a sick call but did nothing further. (ECF 7 at 9, ECF 14 at 4-6). However, Palacios alleges no facts to support his assertion that their refusal to provide medical care was motivated by deliberate indifference. He alleges no facts showing that Boggs and Carrol knew that a substantial risk of serious harm to Palacios existed; at best, they knew he had a cut on his nose and a sore shoulder, and he was complaining of pain. (ECF 14 at 16). Palacios admits that his injuries were not life-threatening

(ECF 14). "An officer's failure to immediately recognize ambiguous symptoms as a medical emergency does not amount to deliberate indifference, although it might constitute negligence." *Stapleton v. Lozano*, 125 F.4th 743, 749-50 (5th Cir. 2025). Further, Palacios alleges no facts showing that Boggs and Carrol were aware that Palacios was unable to request a sick call after they booked him into jail, or that he had not been treated days after his initial request to them. Lastly, he does not allege that the delay in providing care itself caused him substantial harm.

Similarly, Palacios alleges that he requested medical care from Tovar, Sikalasnih and Christopher on what appear to be separate occasions. Each officer told him to put in a sick call. He alleged no facts showing that their failure to provide medical care was motivated by deliberate indifference. Nor does he allege facts showing that they were aware that he faced a substantial risk of serious harm if he did not receive immediate medical attention. Palacios alleges no facts showing that they were aware that his repeated requests were being ignored. Again, he alleges no facts showing that the delay in medical care itself caused him substantial harm. In short, he fails to allege facts that, if true, would support his conclusory allegations against these Defendants. Palacios fails to state a viable cause of action against Boggs, Carrol, Tovar, Sikalasnih and Christopher, and such claims should be dismissed.

**2. Defendant Trevino.**

Palacios alleges that he asked Trevino for medical attention on three occasions when she saw him to ask suicide protocol questions: January 31, February 3 and February 4. (ECF 7 at 9-11, ECF 14 at 8). She clearly should have been aware that he was not receiving the medical care that he was requesting; however, his claims against her fail for the same reasons as outlined above: he has alleged no facts showing that Trevino was deliberately indifferent to his need for medical care, that he faced substantial harm due to the failure to receive care, or that the delay in care in

itself caused him substantial harm.

Palacios also alleges that Trevino falsified his answers to the suicide protocol questions in order to keep him in the suicide watch cell longer than necessary. (ECF 7 at 9-11, ECF 14 at 8). However, it is clear that there is no constitutional right to avoid being placed on suicide watch, "even when not necessary." *Langlinais v. Nelson Coleman Corr. Center*, No. 13-3003, 2015 WL 225222 (E.D. La. Jan. 15, 2015) (collecting cases), quoting *Jones v. Lee*, No. 2:09-CV-11283, 2012 WL 683362, at *4 (E.D. Mich. Mar. 2, 2012) ("Temporary placement on suicide watch, even when not necessary, does not implicate a liberty interest protected by the Due Process Clause nor does it amount to cruel and unusual punishment under the Eighth Amendment."), *adopted*, 2012 WL 1048541 (E.D. Mich. Mar. 28, 2012); *Alexander v. So. Health Partners*, No. 3:22-cv-395, 2024 WL 3240652 *6 (N.D. Tex. June 28, 2024) ("And as it relates specifically to one's placement in a suicide-prevention cell, there is no constitutional right to avoid being placed on suicide watch, [let] alone for only five days after a suicidal call. Therefore, the Court dismisses [plaintiff's] Section 1983 claims … because no constitutional violation has occurred." (internal quotation omitted)).

As a result, even if Trevino kept Palacios on suicide watch unnecessarily, such action does not give rise to a constitutional violation. Accordingly, Palacios' claims against Trevino should be dismissed.

**G. Access to Courts.**

Palacios alleges that Garcia interfered with his access to the courts, presumably by failing to provide him a copy of Potter County's inmate handbook. (ECF 7 at 8, 15). When asked to provide further details to support the conclusory allegation in his Amended Complaint, Palacios failed to respond. (ECF 14 at 14). Prisoners have a right of access to the courts protected by both

the First Amendment right to petition for redress of grievances and the Fourteenth Amendment right to procedural and substantive due process. *Bounds v. Smith*, 430 U.S. 817, 828 (1977); *Jackson v. Procunier*, 789 F.2d 307, 310 (5th Cir. 1986). The right of access to courts requires that inmates be allowed a reasonably adequate opportunity to file non-frivolous cases challenging their convictions and the conditions of their confinement. *Jones*, 188 F.3d at 325. In order to recover for a denial of access to the courts, an inmate must show that an "actionable claim [involving a challenge to a sentence or conditions of confinement] which he desired to bring has been lost or rejected, or that the presentation of such a claim is currently being prevented ...." *Lewis v. Casey*, 518 U.S. 343, 356 (1996); *see also Eason v. Thaler*, 73 F.3d 1322, 1328 (5th Cir. 1996) (holding that to state a sufficient claim of denial of access to the courts, plaintiff must demonstrate that his position as a litigant was prejudiced as a direct result of the denial of access).

Palacios fails to meet this standard. He does not assert that Garcia's failure to provide the handbook prevented him from filing a lawsuit. Nor does he state that any pending lawsuits were dismissed as a result of the conduct of which he complains. In short, Palacios has not shown that Garcia hindered his ability to pursue a "nonfrivolous" or "arguable" legal claim. *See Chriceol v. Phillips*, 169 F.3d 313, 317 (5th Cir. 1999) (inmate alleging denial of access to courts must demonstrate actual injury). As a result, Palacios' access to the courts claim should be dismissed as frivolous.

**H. Leave to Amend.**

Ordinarily, a *pro se* plaintiff should be granted leave to amend his complaint prior to dismissal. *Brewster*, 587 F.3d at 767-68. The district court is not required to allow such an opportunity, though, if the prisoner's claims are clearly frivolous, *Eason*, 14 F.3d at 9, or if the prisoner has pleaded his best case in the current complaint. *Mendoza-Tarango v. Flores*, 982 F.3d

395, 402 (5th Cir. 2020). Palacios has fully responded to the Court's questionnaire and has clearly stated his best case. Under these circumstances, the Court concludes that granting leave to amend would be futile and cause needless delay.[4]

## III. Recommendation

For the reasons stated above, the Magistrate Judge concludes that Plaintiff's claims should be DISMISSED WITH PREJUDICE pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

## IV. Instructions for Service

The United States District Clerk is directed to send a copy of this Findings, Conclusions and Recommendation to each party by the most efficient means available.

IT IS SO RECOMMENDED.

ENTERED September 14, 2026.

Lee Ann Reno

LEE ANN RENO
UNITED STATES MAGISTRATE JUDGE

## * NOTICE OF RIGHT TO OBJECT *

Any party may object to these proposed findings, conclusions and recommendation. In the event parties wish to object, they are hereby NOTIFIED that the deadline for filing objections is fourteen (14) days from the date of filing as indicated by the "entered" date directly above the signature line. Service is complete upon mailing, Fed. R. Civ. P. 5(b)(2)(C), or transmission by electronic means, Fed. R. Civ. P. 5(b)(2)(E). Any objections must be filed on or before the fourteenth (14th) day after this recommendation is filed as indicated by the "entered" date. *See* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(2); *see also* Fed. R. Civ. P. 6(d).

Any such objections shall be made in a written pleading entitled "Objections to the Findings, Conclusions and Recommendation." Objecting parties shall file the written objections

---

[4] That notwithstanding, the 14-day objection period will permit Palacios the opportunity to proffer factual and/or legal bases, if any, to cure the deficiencies in his claims outlined herein.

with the United States District Clerk and serve a copy of such objections on all other parties. A party's failure to timely file written objections shall bar an aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings, legal conclusions, and recommendation set forth by the Magistrate Judge and accepted by the district court. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1), *as recognized in ACS Recovery Servs., Inc. v. Griffin*, 676 F.3d 512, 521 n.5 (5th Cir. 2012); *Rodriguez v. Bowen,* 857 F.2d 275, 276–77 (5th Cir. 1988).